# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $57,442.32 IN FUNDS ON DEPOSIT IN            Case Number:   20-969M(NJ)
REGION'S BANK ACCOUNT ENDING IN 3126,
HELD IN THE NAME OF DEBORAH JEAN GREEN

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Antonio Murray, being duly sworn depose and say:

I am a Special Agent assigned to the United States Secret Service and have reason to believe that in the Northern District of Alabama there is now certain property, namely, up to $57,442.32 in funds on deposit in Region's Bank account ending in 3126, held in the name of Deborah Jean Green, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that consists of, or is traceable to, proceeds of wire fraud committed in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                                                                                    _____
                                                                                                    Signature of Affiant

Sworn to before me, and subscribed in my presence            Antonio Murray, USSS
by telephone

7/10/2020                                                                                     at Milwaukee, Wisconsin
Date and time issued                                                                    City and State

                                                                                                    _____
Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer                                                Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Antonio Murray, having been duly sworn on oath, state as follows:

## Affiant's Background

1.  I am a Special Agent with the United States Secret Service and have been so employed since 2019. I am currently assigned to the United States Secret Service Milwaukee Financial Crimes Task Force (MFCTF). My duties as an investigator on the MFCTF include investigations into financial crimes, such as identity theft, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my time on the MFCTF, I have been involved in investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2.  As a Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including undercover operations, reviewing physical and electronic evidence, and obtaining and reviewing financial records. In the course of these investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3.  Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4.  The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from the victim of this incident.

## Property Sought to be Seized

5.  I submit this affidavit in support of an application for a warrant to seize up to $57,442.32 in funds on deposit in Region's Bank account ending in 3126 ("RB 3126"), held in the name of Deborah Jean Green.

6.  Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that up to $57,442 in funds on deposit in RB 3126 are:

    a.  Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C § 1343;

    b.  Subject to civil forfeiture under 18 U.S.C §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

**Facts Supporting Finding of Probable Cause for Issuance of Seizure Warrant**

**Common attributes of Business Email Compromise (BEC) fraud schemes**

7. One common financial fraud scheme is known as a Business Email Compromise (BEC) fraud scheme. In one type of BEC fraud scheme, a fraudster gains unauthorized access to, or spoofs, the email address belonging to a victim business. The fraudster then sends an electronic communication—on the false pretense that the fraudster is a representative of the victim business—instructing customers of the victim business to wire money to a bank account controlled by the fraudster or his associates.

8. In many cases, the person or persons who launder the proceeds of a BEC fraud scheme first open a bank account or accounts to receive those proceeds. Such a launderer often opens the bank account or accounts in the name of one or more fictitious businesses in order to conceal the fraudulent nature of the bank account from the bank and the victims who are duped into wiring money there.

9. Perpetrators of BEC fraud schemes sometimes also recruit witting or unwitting persons within the United States to open bank accounts that the perpetrators use to receive proceeds of the scam. Those persons are sometimes referred to as "money mules."

10. Not all such third-party account holders who receive BEC proceeds are ignorant, at least initially, as to the nature of the BEC fraud proceeds being deposited into their accounts. Some persons who open and use accounts to receive BEC fraud proceeds are witting money mules who understand the criminal nature of the funds they are receiving in the account from the outset. Other such account holders are put on notice of the facts that they are receiving, and helping launder, fraud proceeds during the course of receiving such fraud proceeds into their account. Thus, some persons who launder BEC fraud proceeds might begin as unwitting money mules but then progress to becoming witting money mules and, therefore, money launderers.

**Ongoing investigation into BEC fraud scheme**

11. I am conducting an investigation that is focusing on a real estate BEC fraud scheme in which an unknown suspect or suspects caused $57,442.32 to be wire transferred from a bank account located within the Eastern District of Wisconsin into RB 3126, an account held in the name of Deborah Jean Green. The scheme involved material misrepresentations and the concealment of material facts.

12. Region's Bank records show that RB 3126 is a personal account held by Deborah Jean Green.

13. The funds sought to be seized – which consist of up to $57,442.32 on deposit in RB 3126 – are funds that were directly wire transferred into RB 3126 from the account of a victim individual having the initials K.K., who was a customer of a victim business having the initials CT&CS, based on misrepresentations, impersonations, and the use of an interstate wire in connection with the BEC scam.

14. On June 25, 2020, victim CT&CS, a business located in the Eastern District of Wisconsin, and one of its customers, K.K., were victims of a BEC fraud scheme.

15. Specifically, the fraudster or fraudsters impersonated an individual employed at victim CT&CS by using a spoofed email address to send false and fraudulent wire instructions to CT&CS's customer, victim K.K., for a real estate transaction.

16. The instructions reads as follows: "We hereby request our funds are wired transferred directly to our account. We do not accept ACH Transfers, these funds will be returned and may cause a delay in closing. Bank name: Region's Bank, Bank Address: 22 E Mifflin St, Madison, WI 53703, ABA#: 062005690, Account Name: Capital Title and closing, Account Number: 0231463126." The instructions had the CT&CS logo on them. The CT&CS logo was blurry, which is a characteristic indicating that the logo had been copied and pasted from another source. Routing number 062005690 is the routing number for Regions Bank, PO Box 681, Birmingham, AL 35201 (800-734-4667).

17. In fact, those wiring instructions were not the proper wire instructions for CT&CS's actual bank account. Rather, they were the wiring instructions for RB 3126, the personal account held by Deborah Jean Green.

18. On June 25, 2020, in reliance upon those false and fraudulent wiring instructions provided by an as-yet unknown fraudster, victim K.K., while intending to wire funds to CT&CS in connection with a real estate purchase transaction, caused a wire transfer of $57,442.32 to be made from victim K.K.'s Chase Bank account to RB 3126.

19. On or about June 29, 2020, after learning that K.K. had wired payment to an account that did not belong to CT&CS, CT&CS spoke with a Region's Bank Security Officer in an attempt to recover the funds for its customer, K.K. But Region's Bank stated that it could not reverse the transaction.

20. On July 2, 2020, Region's Bank confirmed that $57,442.32 remained on deposit in RB 3126. Region's Bank froze the account at the request of law enforcement due to the account being funded by suspected proceeds of a BEC fraud scheme.

**Investigation into Deborah Jean Green**

21.     Law enforcement records show that Deborah Jean Green has an address of 36XX WPA Rd, Alpena, AR 72611.

22.     On July 2, 2020, I contacted the Corporate Security Bank Investigator for CT&CS, who had interviewed Deborah Jean Green and obtained the following information:

    a.  Green claimed that several years ago she was on the dating website, Plenty of Fish, and an individual who identified himself as "Mark Smith" began conversing with her.

    b.  Green claimed that "Mark Smith" told her that he used to live next to Green when they were younger and living in the Seattle area. Green stated that even though the photos that Mark Smith shared with her did not resemble the Mark Smith that lived near her, she still believed his story.

    c.  Green stated that "Mark Smith" claimed that he was in prison and that, in order for him to continue working in his field, he had an attorney change his name to "Matt King." "Mark Smith" claimed to currently be in Vietnam.

    d.  Green claimed that on July 1, 2020, the person purporting to be "Mark Smith" instructed Green to wire the remaining funds in her RB account ending in 3126 to the following: Beneficiary: King Sonic Industrial Development Co. Room 1202 Capital Center #5-19 Gardine's Bazkar Causeway Bay Hong Kong Account #: 012-925-920-09894 Bank: Bank of China #1 Garden Road Hong Kong Swift #: BKCHHKHHXXX.

## Applicable Asset Forfeiture Provisions

23.     Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

24.     Section 984 (a) provides in part:

(1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution

    (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

25. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

26. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

27. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture by the accompanying seizure warrant.

### Conclusion

28. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $57,442.32 in funds on deposit in RB 3126 are:

   a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

   b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C §§ 1956(c)(7) and 1961(1);

   c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###